UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


UNITED STATES OF AMERICA

v.                                              Case Nos.    3:08cr90/MCR/CJK
                                                             3:11cv617/MCR/CJK
JORGE MATA

_____/

<u>REPORT AND RECOMMENDATION</u>

This matter is before the court upon Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (doc. 104).  The Government has filed a response (doc. 115) and Defendant has filed a reply (doc. 128).  The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.  *See* Rules Governing Section 2255 Cases 8(a) and (b).

# PROCEDURAL BACKGROUND[1]

Defendant was charged in a two count indictment with conspiracy to distribute and possess with intent to distribute 100 kilograms of marijuana in violation of 21 U.S.C. § 841(b)(1)(B)(vii) and possession with intent to distribute a detectable amount of marijuana on a date certain in violation of 21 U.S.C. § 841(b)(1)(D) (doc. 3).   On September 28, 2008 the Government filed a notice of enhancement information identifying a single prior felony drug conviction (doc. 10).   Defendant qualified for the appointment of counsel, and Christopher Rabby entered a notice of appearance in his behalf (doc. 20).   Two months later counsel requested, and the court granted, leave to withdraw (docs. 28, 29, 33).   Clinton Couch appeared in Defendant's behalf in March of 2009 (doc. 35).

Defendant entered a plea of guilty pursuant to a written plea agreement and factual summary via which he agreed to plead guilty to Count One and cooperate with the Government in exchange for the dismissal of Count Four (docs. 42, 43).   The Factual Summary in Support of Guilty Plea specifically stated that the conspiracy involved in excess of 100 kilograms of marijuana (doc. 43 at 1).   Defendant reserved the right to challenge the Government's notice of enhancement and the application of the leadership role adjustment, but did not contest "what he did" or the content of the signed statement of facts (doc. 91 at 12–13).   Defendant was specifically reminded that he would not be able to come to sentencing and deny the facts contained in the document or challenge the drug weight, although he would be able to object to legal conclusions, such as the application of a role enhancement (*id*. at

---

[1]Detailed statements of facts describing the offense conduct are set forth in the statement of facts (doc. 43) and have been set forth herein only as necessary for the court's resolution of the instant motion.

24).  Defendant indicated that he understood this, and also confirmed his satisfaction with counsel (*id*. at 25, 26).

The Presentence Investigation Report ("PSR") was disclosed to the defense on June 11, 2009 (*see* docs. 46, 78).  Defendant was held accountable for 219 kilograms of marijuana, which corresponded to a base offense level of 26 (PSR ¶ 92).[2]  Defendant received a four level adjustment due to his leadership role in the offense, and a two level adjustment for obstruction of justice (PSR ¶¶ 95, 96).  Despite his guilty plea, due to his obstructive conduct, he did not receive an acceptance of responsibility adjustment, and his total offense level was 32 (PSR ¶¶ 98, 101).  Defendant's criminal history category was III, and the applicable guidelines range was 151 to 188 months (PSR ¶¶ 109, 134).  A mandatory minimum term of ten years incarceration also applied (PSR ¶ 133).

Defendant objected, asserting that he did not have the requisite prior conviction to justify application of the enhanced penalties, that the role adjustment was unwarranted, and that he had neither obstructed justice nor failed to accept responsibility for his actions (PSR ¶¶ 154–161).  Defendant also objected to the scoring of his criminal history (PSR ¶¶ 164–167).

Before sentencing the Government filed a motion requesting that the court impose an above-guidelines term of imprisonment (doc. 48).  The Government noted that Defendant wanted to recant admissions made at the time of his guilty plea and that Defendant had made "systematic attempts . . . to harass, intimidate, and in one

---

[2]This offense level applies to offense conduct involving at least 100 kilograms, the amount identified in the factual summary, but less than 400 kilograms of marijuana.

case, arrange for the attempted murder of, identified federal witnesses against him"
(doc. 48 at 3).

The court heard testimony from several witnesses during the two part
sentencing hearing (docs. 89, 92).  The Government called Joshua Hinsley and Rico
Billings, two inmates at the Santa Rosa County Jail, to testify about Defendant's
alleged attempt to convince Hinsley to harm or kill Billings due to Billings' likely
testimony against Defendant.  It also called Victor Cuevas and Agent Keith
Humphrey to offer testimony about Defendant's role in the offense.  The defense
called several correctional officers and two inmate witnesses, Gerardo Cerano and
Robert Wayne Shiver, to rebut the allegation that Defendant had sought to harm
Billings.  The defense also called Defendant's brother, Alfredo Mata, to offer
testimony relevant to the role enhancement.  Ultimately, the court overruled
Defendant's objections and found the Government's request for a variance to be
proper (doc. 89 at 52–56).  It sentenced Defendant to a term of 200 months
imprisonment, which was 30 months above the mid-point of the applicable guidelines
range (*id*. at 54, 56).

Defendant appealed, contending that the district court erred by rejecting his
constitutional challenge to the validity of the prior state court felony drug conviction
which was used to enhance his sentence in this case.  Defendant also contended that
the district court's upward variance from the applicable guidelines range was
substantively unreasonable (doc. 100).  The appellate court found no error and
affirmed.

Defendant timely filed his § 2255 motion on December 19, 2011 pursuant to the prison mailbox rule[3] (doc. 104).  Concurrent with his motion, he also moved for leave to file an over-length memorandum of law (doc. 105).  The court denied the latter motion, and afforded Defendant thirty days to file a proper memorandum in support of his motion to vacate (doc. 107).  When no memorandum appeared to be forthcoming, on March 27, 2011, the court directed the Government to respond (doc. 110).  The Government moved for two extensions of time before filing its response on July 25, 2012 (docs. 111–115).    On August 14, 2012, the court afforded Defendant the opportunity to reply within thirty days (doc. 116).   Defendant responded by filing another motion for leave to file an over-length brief and a motion for extension of time to file his memorandum (docs. 117, 118).  On September 5, 2012, the court denied the former motion and granted Defendant an extension of time until September 30, 2012 to reply (docs. 119, 120).  Defendant's second motion for extension of time was granted (docs. 121, 122), but when Defendant failed to file his memorandum by the October 17, 2012,  deadline, the undersigned entered an order to show cause way Defendant should not be denied the opportunity to file a reply brief due to his failure to comply with an order of the court (doc. 123).    Shortly thereafter, the clerk received, and docketed, another motion for enlargement of time, dated October 23, 2012 (doc. 124).  The court granted the motion and reset the deadline for November 21, 2012 (doc. 125).  On December 20, 2012, having received

---

[3]A pro se inmate's pleading is deemed filed at the time it is placed in the prison mailbox or delivered to prison authorities for mailing.  *See Houston v. Lack,* 487 U.S. 266 (1988) (holding that a pro se inmate's notice of appeal was filed as of the time he placed it in the prison mailbox, thus creating the "prison mailbox rule");  *Williams v. McNeil,* 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) (under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing); *Washington v. United States,* 243 F.3d 1299, 1301 (11th Cir. 2001) (absent evidence to the contrary, court assumes that a pro se petition is delivered to prison authorities for mailing the date it was signed).

nothing from Defendant, the court entered another order to show cause, affording Defendant yet another fourteen days to file his reply brief (doc. 126). In that order the court noted that if Defendant failed to timely comply, the office of the U.S. Attorney would be given an opportunity to contest the submission of the reply brief, if one was later submitted (doc. 126).

On January 8, 2013, the clerk received and docketed Defendant's motion for nunc pro tunc enlargement of time (doc. 127) and a pleading styled as a memorandum in support of defendant's § 2255 motion (doc. 128). The court entered an order in which it noted that

> The defendant's reply brief was due on November 21, 2012 (doc. 125). The defendant failed to submit his brief by that deadline, and instead on December 5, 2012, notified the court telephonically that his reply brief and nunc pro tunc motion for extension of time had been mailed to the court. The court, believing defendant to be acting in good faith and cognizant of the limitations inherent in completing legal matters in prison and representing oneself *pro se*, waited an additional fifteen days on defendant's documents. Faced with no receipt of the documents, the court issued an order to show cause (doc. 126), with a response date of January 3, 2013. On January 8, 2013, the court received defendant's motion for nunc pro tunc enlargement of time (doc. 127) and memorandum in support of his 2255 petition (doc. 128). Notably, these materials are dated December 31, 2012. The inevitable question, therefore, is what happened to the materials defendant assured the court were in the mail on December 5, 2012. The court will not speculate as to the defendant's motives, but will note that misrepresentation, whether intentional or not, is not a recommended behavior.
> That being said, the court is not unwilling to accept defendant's reply brief, but in accordance with the court's prior order (doc. 126), will allow the government to contest the submission of the document if it so chooses. On a final note, the defendant's reply brief, if accepted, shall only be considered to the extent it addresses arguments raised in the government's response (doc. 115). Novel or supplementary arguments

will not be considered by this court.  Defendant had ample opportunity
(over three months) to amend his 2255 petition before it was served on
the government.

(Doc. 129).   The Government responded, stating that "in light of the Court's
indication that it will not consider any new matters raised in this late filing, the
Government does not object" (doc. 130).[4]   After considering the Government's
response, the court granted the motion and indicated that it would consider the reply
brief within the parameters detailed in its previous order, that is, it would not consider
or address any arguments not addressing points made in the Government's response
(doc. 131).

Defendant separated the claims in his § 2255 motion into three grounds for
relief, each of which had multiple subparts.  In his reply brief he indicates that he
abandons five of his fourteen sub-claims, including Ground One, parts (2) and (3),
and Ground Three in its entirety (doc.128 at 12 n. 5, 6).[5]  The Government opposes
Defendant's motion in its entirety, including Defendant's request for an evidentiary
hearing.

## LEGAL ANALYSIS

General Standard of Review

Collateral review is not a substitute for direct appeal, and therefore the grounds
for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A
prisoner is entitled to relief under section 2255 if the court imposed a sentence that

---

[4]The Government also "respectfully move[d] this Court to deny the filing or accepting the defendant's reply brief" (doc. 130 at 1).

[5]Defendant indicates that he abandons the claims raised in Ground Three due to space limitations.  Defendant could have rested on the claims as raised in his initial motion, but this would not have altered the conclusion reached in this recommendation as a cursory review of the abandoned claims reveals that they have no merit.

(1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n. 8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. *Nyhuis*, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not

actionable in a section 2255 motion and will be considered procedurally barred. *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011). An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." *Lynn*, 365 F.3d at 1232 n. 14 (quoting *Mills*, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." *Lynn*, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d, 1, 8 (11th Cir. 2012). In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013). In

applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013).

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to review counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315. When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been

different. *Strickland*, 466 U.S. at 694.  For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010).  A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).  Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203–04 (2001).  A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance.  *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987).  Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.  *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (citing *Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See Chandler v. McDonough*, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); *Hill v. Moore*, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief."));

*Ferguson v. United States*, 699 F.2d 1071, 1072 (11th Cir. 1983).  A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.  *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004); *Tejada*, 941 F.2d at 1559; *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted).  Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.  *Lynn*, 365 F.3d at 1239.

Ground One–Denial of Right of Allocution[6]

Defendant contends that the district court violated his fifth amendment right to due process when he was denied his right of allocution at sentencing.  The Government concedes that the district court did not address Defendant specifically and allow him to speak in mitigation of his sentence in accordance with Federal Rule of Criminal Procedure 32.  Had Defendant raised this issue on appeal, Defendant's case likely would have been remanded for re-sentencing.  *See Green v. United States*, 365 U.S. 301 (1961); *United States v. Prouty*, 303 F.3d 1249 (11th Cir. 2002); *United States v. Knight*, 446 F. App'x 171 (11th Cir. 2011).  Defendant now raises this issue as a due process claim, rather than as a claim of ineffective assistance of counsel, and as such, this claim, which could have been raised on appeal, is procedurally barred. *Lynn*, 365 F.3d at 1234–35; *Bousley*, 523 U.S. at 621.

If the court liberally construes Defendant's claim as incorporating a claim of ineffective assistance of counsel, in order to establish that he is entitled to relief, Defendant must show prejudice; there is no per se rule that counsel's failure to object

---

[6]Defendant's initial motion contained three sub-parts to this claim (doc. 104 at 3).  In his reply, Defendant indicates his intent to abandon the other two sub-parts, conceding that they are either legally untenable or foreclosed by the Eleventh Circuit's opinion on appeal (*see* doc. 128 at 12).

to the denial of the right to allocate amounts to ineffective assistance of counsel. *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008).   The Eleventh Circuit has recognized that "[a] defendant cannot easily demonstrate prejudice in the context of allocution because the impact that an allocution is likely to have on the judge's sentencing discretion is usually enormously difficult to ascertain." *Id*. at 1299 (quoting *United States v. Prouty*, 303 F.3d 1249, 1253 (11th Cir. 2002) (internal quotations omitted)).   The court noted that under some circumstances, there may be strategic reasons for counsel not to object to an omission, for instance when the defendant has already informed counsel that he intends to reject the opportunity to allocate. *Id.* at 1300.  In such an instance, "[c]ounsel's decision not to interrupt the proceedings with an objection, when he knows that his client will only reject any later opportunity to allocate, does not constitute deficient performance." *Id*.

Defendant contends in his sworn statement that if he had been afforded his right to allocate at sentencing:

> I would have, inter alia, vehemently denied the allegations that I had attempted to recruit Joshua Hinsley to assault (or, as Hinsley falsely testified, to "kill") Rico Billings, and would have set forth in some detail the evidence and witnesses which had not been presented by attorney Couch in my defense at my sentencing (and which I intend to put forth for the court's consideration in this collateral proceeding).   I also would have denied any personal connection to Latino and/or Mexican organized crime activities or gangs; and would have reminded the Court of the absence of violence or weapons in my case; my non-violent nature in general; my stable marriage and parental and familiar (*sic*) responsibilities; and numerous other factor which attorney Couch did not present on my behalf. My personality and demeanor are not consistent with that

> of a violent person; however, the court was never exposed
> to that personality because I was never afforded my right
> to allocution.

(Doc. 104-1 at 9–10).  Defendant further notes that not only did he not receive the lowest sentence under the Sentencing Guidelines, but also his sentence included an upward variance from the applicable guidelines range.  Therefore, he argues, this variance offers strong support for his claim that he should be resentenced after receiving the opportunity to address the court.

The Government's response includes affidavits from counsel, in one of which counsel addresses his pre-sentencing discussions with Defendant about the potential costs and benefits of allocution (doc. 115 at 34).  Counsel states that during a meeting at the jail a few days before sentencing,  Defendant told counsel that he did not want to address the court.  Counsel asked Defendant again at sentencing if he would like to speak to the court and Defendant reiterated that he "did not have anything else to say other than his testimony already received regarding PSR objections" (*id*.).  Counsel further indicates that he did not address the issue of allocution on appeal because his client had been clear and unequivocal that he had nothing else he wanted to say.  Counsel stated that this was Defendant's decision alone, and that counsel gave him advice but made no attempt whatsoever to prevent his allocution.

Defendant has not contradicted counsel's rendition of their pre-sentencing conversation about allocution, or counsel's statement that Defendant unequivocally told him that he had no desire to address the court.  Defendant's after the fact assertions, made with the proverbial clarity, or perhaps regret, of hindsight do not establish prejudice.

Ground Two:  Ineffective assistance of counsel at Sentencing

Defendant's second ground for relief is that his attorney was constitutionally ineffective in his representation of Defendant at sentencing.  Defendant's second ground for relief contains eight separate sub-parts which will be addressed in turn.

    1.  Failure to properly challenge Defendant's prior state conviction

Defendant maintains that counsel failed to obtain documents, affidavits, or testimony to challenge the validity of the prior Texas felony drug conviction that was used to enhance his sentence (*see* doc. 10; doc. 78, PSR ¶¶ 104, 133).  Defendant testified at sentencing that his state public defender in the case in question had told him that although he entered a guilty plea, if he successfully completed his probation, the conviction would be expunged and it could not be used against him in the future (doc. 92 at 7–8).  Defendant now claims that during one of the pre-sentencing consultations with Mr. Couch, that he asked counsel to contact the public defender who had represented him in the Texas case to confirm Defendant's recollection of events, but that counsel failed to do so (doc. 104-1 at 7).

The substance of the underlying basis for Defendant's claim, that his state-court counsel's advice concerning the collateral consequences of his guilty plea was wrong, and therefore was outside the range of competence demanded of attorneys, was addressed on appeal (*see* doc. 100).  The Eleventh Circuit noted that state-court counsel is not required to warn a defendant that his guilty plea could have sentencing consequences if he is later prosecuted in federal court (*id.* at 7, citing *McCarthy v. United States*, 320 F.3d 1230, 1234 (11th Cir. 2003)).  The court also noted that an affirmative misrepresentation in response to a specific inquiry from the defendant may, under some circumstances, constitute ineffective assistance of counsel (*id.*

(citations omitted)).  The Eleventh Circuit concluded that Defendant had failed to meet his burden of showing that the conviction was constitutionally invalid (*id*.).

Defendant now claims that this failure was the result of his attorney's constitutional deficiency.  To succeed on an ineffective assistance of counsel claim, Defendant must show both deficient performance and prejudice.  Absent any proof other than Defendant's own conclusory and self-serving assertions that the underlying state conviction was invalid, all of which was presented at sentencing, Defendant cannot show prejudice.  Defendant faults Mr. Couch for not contacting Defendant's former state public defender to obtain copies of relevant state court records.  The record reflects that counsel told the court that he attempted to contact the clerk of court in Texas to ascertain the identity of Defendant's attorney in that case, without success (doc. 89 at 34).[7]  Furthermore, Defendant has failed to show that the outcome of the instant proceedings would have been different had counsel been able to speak with Defendant's former attorney, *ie*., that the information counsel would have obtained would have conclusively established the constitutional infirmity of Defendant's prior conviction.  Defendant himself has not produced either the records in question or an affidavit from his former attorney, nor has he suggested that he has attempted to do so.  His assertion that the underlying conviction was constitutionally invalid remains unproven, and as such, there is no predicate for a finding that he was prejudiced by any alleged failing of counsel.

---

[7]The court notes that counsel's and Defendant's recollection of events differs.  Mr. Couch states in his affidavit that he attempted to identify Defendant's former attorney in order to confirm what Defendant was saying but that Defendant "could not or would not give me any information about the attorney" (doc. 115 at 28).  Defendant states that he told Mr. Couch that his former attorney was a man by the name of Arturo Gallegos (doc. 104-1 at 7–8).

2.  Counsel acquiesced to inimical Guilty Plea and Factual Statement

Defendant complains that counsel negotiated and acquiesced to a guilty plea and factual summary which were "inimical" to him.   Any complaint Defendant may have had about the content of the guilty plea and factual statement were waived when he entered his guilty plea.  *See United States v. Brown*, 752 F.3d 1344, 1347 (11th Cir. 2014) ("A guilty plea, since it admits all the elements of a formal criminal charge, waives all non-jurisdictional defects in the proceedings against a defendant.") (quotations omitted);  *see also United States v. Patti*, 337 F.3d 1317, 1320 (11th Cir.2003)  ("Generally,  a  voluntary,  unconditional  guilty  plea  waives  all non-jurisdictional defects in the proceedings.").  Furthermore, Defendant admitted, under oath, at the rearraignment proceeding that he had sufficient time to speak with counsel about the plea agreement and factual summary and that he had had them in his possession (doc. 91 at 13–16).  When the court explained the plea agreement to him, including the potential sentences he faced depending on whether he had a prior conviction,  the  court's  discretion  in  sentencing,  the  possibility  of  receiving  a substantial assistance motion, Defendant consistently asserted his agreement or understanding (*id*. at 16–22).  Defendant assured the court that he and counsel had discussed the statement of facts as well, that he understood what he was agreeing to, and that he concurred with the Government's representation of the facts (*id*. at 23–25).   Solemn  declarations  made  under  oath  in  open  court  carry  a  strong presumption of verity.  *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977); *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) (citing *United States v. Gonzalez-Mercado*, 808 F.2d 796, 800 n.8 (11th Cir. 1987)); *Winthrop-Redin v. United States*, Case No. 13-10107, 2014 WL 4699391, at *5 (11th Cir. Sept. 23,

2014).  Defendant will not now be heard to complain about the contents of the plea agreement and factual summary, and he has not shown any constitutional deficiency in counsel's performance.

### 3. Objections to PSR

Defendant asserts that trial counsel made objections to the PSR which put Defendant's credibility at issue and jeopardized his acceptance of responsibility adjustment.  Defendant appears to refer to the defense objection to the role enhancement.  At his rearraignment, the court specifically advised Defendant that despite his admission to the information contained within the statement of facts, he would still be permitted to make legal objections, such as to the role enactment (doc. 91 at 13, 24).  The PSR and the sentencing transcript both reflect that Defendant did not receive an acceptance of responsibility adjustment, but not because he objected to the leadership adjustment, rather because of his attempt to intimidate a federal witness (doc. 78, PSR ¶ 90; doc. 89 at 53–54). Defendant has not shown that counsel's objection to the role enhancement had any bearing on his acceptance of responsibility adjustment.   Counsel's performance was not constitutionally ineffective, and Defendant is not entitled to relief.

### 4. Counsel's decision to call Alfredo Mata as witness at sentencing

Defendant claims that counsel was constitutionally ineffective in calling Defendant's brother, co-defendant Alfredo Mata, as a witness at sentencing and in failing to prepare Alfredo Mata to testify.  It cannot be disputed that Alfredo Mata's brief testimony, which could be charitably construed as rambling, was not particularly beneficial to the defense (*see* doc. 92 at 173–180).  In its argument to the court, the Government opined that Alfredo Mata was a better witness for the Government than

the defense, and suggested that Alfredo Mata's testimony and demeanor supported the conclusion that it was Defendant, not Alfredo Mata, who was the leader of the conspiracy (doc. 89 at 27).   Even defense counsel conceded in his remarks to the court that had he known of the nature of Alfredo Mata's testimony, he "certainly wouldn't have called him" and that the witness "probably did more damage to the defense and benefit to the Government" (*id*. at 37).   Counsel went on to argue, however, that the court should not rely on Alfredo Mata's testimony to conclude that his client was a leader in the conspiracy (*id*.).   In making its rulings on the defense objections, the court did not mention, and thus presumably did not rely on, the testimony of Alfredo Matas in any fashion (*id*. at 52–53).   Thus, Defendant cannot show that absent counsel's decision to call his brother as a witness, the outcome of the proceeding would have been different, and he is not entitled to relief.[8]

     5 and 6.   <u>Inadequate Examination of Witnesses at Sentencing</u>

     In sup-part 5 of Ground Two, Defendant contends that counsel failed to conduct adequate direct and cross-examination of witnesses at the sentencing hearing. Defendant's allegations in his initial motion were conclusory and unsupported, as he did not identify the witnesses or specify the alleged deficiencies in counsel's examination of them.   It was only after the Government responded, noting that the motion was bereft of factual detail, that Defendant expanded upon his allegations.

     Defendant contends that Couch was remiss in his direct examination of Defendant because Couch did not ask whether Defendant would have proceeded to trial in his state case had he had been given proper advice regarding the possibility

---

[8]Again, the court notes that Defendant and his attorney have conflicting recollections about whose decision it was to call Alfredo Mata as a witness at sentencing (*see* doc. 104-1 at 7; doc. 115 at 29).  Resolution of this conflict is irrelevant to the ultimate question in this proceeding: whether Defendant has shown prejudice.

that the state conviction could be used against him in a later proceeding.  Defendant notes the comment by the Eleventh Circuit that "there is no evidence in the record that he would not have pleaded guilty if counsel had given correct advice" (doc. 100 at 7–8).  However, even if counsel had asked this question and Defendant had responded that, had he been properly advised, he would have chosen to proceed to trial, Defendant's testimony on this point would have remained uncorroborated.  The record is abundantly clear that the sentencing court found Defendant's unsubstantiated testimony to be unpersuasive in light of his "huge incentive . . . to testify falsely... or to testify for his own self-serving purposes" (doc. 89 at 52).  The addition of another unconfirmed fact would not have changed the outcome of the proceedings.

Defendant also contends that counsel's cross examination of Government witnesses Hinsley and Billings was deficient, and suggests that counsel should have elicited testimony which would have provided a temporal accounting of where Defendant's threatening conduct specifically occurred, which, he maintains, would have presented the court with an "implausible scenario."  Defendant has offered no facts or evidence, only conclusory and speculative argument about how the witnesses would have responded to the proposed line of questioning and how these answers might have impacted the court's sentencing determinations in his case.  There is no basis for relief.

In sup-part 6 of Ground Two, Defendant, leaving no stone unturned, makes virtually the opposite assertion, that counsel asked too many questions during cross-examination and thus "opened the door" to presentation of testimony which was prejudicial to the defense.  Again, Defendant neglected to provide any facts in support

of his claim in his initial § 2255 motion, which prevented the Government from offering a meaningful response.  In his reply, Defendant identifies the prejudicial testimony as stemming from the testimony of three individuals:  the testimony of Joshua Hinsley regarding an assault on Adan Juarez by an individual identified as "Honduras" (doc. 92 at 35–47); the testimony of Hector Cuevas regarding threatening gestures he perceived were directed at him by unknown inmates (*id*. at 116–123); and the testimony of Agent Humphrey regarding information conveyed to him by Rico Billings and actions which Humphrey took in response thereto (*id.* at 156–169).

Although the testimony in question may not have been helpful to the defense, from a review of the record in its entirety the court cannot conclude that counsel's "opening the door" in each or any of these instances altered the outcome of the proceedings.  Counsel was either able to mitigate the impact of the testimony through skillful re-cross examination, or the testimony was not key to the court's ruling.  For instance, on re-cross examination, Hinsley admitted that most of his testimony was comprised of repeating things that other individuals had told him (doc. 92 at 44–45).  Similarly, Cuevas testified on re-cross examination that the threatening gestures were not directed at him (*id*. at 122–123).  Finally, the court did not mention Humphreys' testimony about the information conveyed to him by Rico Billings when it rendered its ruling on the obstruction and acceptance issues (doc. 89 at 53–54).   Defendant therefore has not shown that counsel's performance in this respect was constitutionally deficient or that he is entitled to relief.

   7.  Failure to investigate

Defendant asserts that his attorney failed to conduct adequate investigation and to prepare for sentencing.  Specifically he claims that counsel failed to interview and

subpoena witnesses, obtain affidavits or subpoena records that were beneficial to him. From the attachment to his motion, it appears that Defendant believes that counsel did not adequately investigate the alleged fabrication of Defendant's attempt to solicit the murder of a Government witness (doc. 104-1 at 4, 5).  In response to this assertion, counsel notes that he "did indeed investigate and prepare for sentencing," that he "subpoenaed several witnesses and presented their testimony along with the Defendant's," that he "made every argument [he] thought appropriate and argued the Defendant's case as best [he] could given the facts at hand" (doc. 115 at 30).

In his response, Defendant concedes that counsel did investigate and call witnesses but complains that the particular testimony offered by counsel was insufficient to overcome that of Billings and Hinsley.  Defendant maintains that "competent" counsel would have impeached the credibility of Hinsley and Billings to the point where their versions of events became implausible. Defendant suggests that counsel should have investigated things such as the dates and locations of confinement of the key players, including their cell assignments, obtained recordings of Billings outgoing telephone calls and outgoing mail, obtained a roster of all inmates contained in the cellblock from the time Billings arrived through the end of April and interviewed "at least some of" these "potential witnesses"; and interviewed the inmate who purportedly warned Defendant to "watch out" for Billings and called said inmate as a witness (doc. 128 at 18–19).  Defendant states that if counsel had done the investigation, "it is likely that the temporal parameters of the alleged threat would have been established, if it actually occurred; and enough documentary and testimonial impeachment material unearthed to seriously call the credibility of

Hinsley and Billings into question, if not to belie their allegations altogether" (doc. 128 at 20).

Defendant has produced no evidence in support of his conclusory assertions. Defendant's unsupported suggestion that the thorough investigation he now proposes might have unearthed evidence that would have called Hinsley's and Billings' credibility into question and led the district court to render a different ruling is insufficient to establish that counsel was constitutionally ineffective for failing to conduct a more extensive inquiry.

8. Cumulative Error

Defendant claims that the cumulative errors and omissions of trial counsel rendered counsel's representation at sentencing ineffective.  It is true that the cumulative effect of several errors that are harmless by themselves could so prejudice a defendant's right to a fair trial that a new trial might be necessary even if the errors considered individually are non-reversible. *See, e.g.*, *United States v. Ramirez*, 426 F.3d 1344, 1353 (11th Cir.2005); *United States v. Preciado–Cordobas*, 981 F.2d 1206, 1215 n. 8 (11th Cir.1993) (citing *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir.1984)); *United States v. Adams*, 74 F.3d 1093, 1099 (11th Cir.1996); United States v. Thomas, 62 F.3d 1332, 1343 (11th Cir.1995). The Supreme Court has not recognized the cumulative error doctrine in the context of ineffective assistance of counsel claims.  *See  Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002) ("the Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief");  *Forrest v. Fla. Dep't of Corr.*, 342 F. App'x 560, 565 (11th Cir. 2009) (noting "the absence of Supreme Court precedent applying cumulative error doctrine to claims of ineffective assistance of counsel.").  Defendant has not

demonstrated constitutional error by trial counsel, and therefore he cannot demonstrate that the cumulative errors of counsel deprived him of a fair sentencing. *See Miller v. Johnson*, 200 F.3d 274, 286 n. 6 (5th Cir. 2000) (citing *Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir. 1993) (explaining that because certain errors were not of constitutional dimension and others were meritless, petitioner had presented "nothing to cumulate"); *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir.1987) (noting that increasing the number of non-meritorious claims raised will not support a finding of cumulative error because "Twenty times zero equals zero.").  This claim affords no basis for relief.

 Conclusion

For all of the foregoing reasons, the court finds that Defendant has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.  Nor has he shown that an evidentiary hearing is warranted.  Therefore Defendant's motion should be denied in its entirety.

## Certificate of Appealability

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84

(2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.  The motion to vacate, set aside, or correct sentence (doc. 104) be **DENIED**.

2.  A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 6th day of October, 2014.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**